**FILED**
**Feb 19, 2020**
**10:14 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| ALISHA THOMAS, | ) | Docket No. 2017-08-0024 |
| **Employee,** | ) | |
| v. | ) | |
| FEDERAL EXPRESS CORP., | ) | State File No. 95463-2015 |
| **Employer,** | ) | |
| And, | ) | |
| AGRI GENERAL INS. CO., | ) | Judge Allen Phillips |
| **Carrier.** | ) | |

---

## COMPENSATION ORDER FOR PERMANENT PARTIAL DISABILITY BENEFITS

---

Ms. Thomas filed a Petition for Benefit Determination (PBD) seeking permanent total disability benefits or additional permanent partial benefits after a settlement. Federal Express contended the underlying injury was non-compensable, but even if it were, disputed the extent of any increased disability. The Court holds Ms. Thomas is entitled to increased permanent partial disability benefits under Tennessee Code Annotated section 50-6-207(3)(B) (2019).

### History of Claim

In the previous Court-approved settlement, Federal Express paid Ms. Thomas permanent partial disability benefits based on a 10% impairment rating from Dr. Melvin Goldin, and it provided lifetime medical benefits "directly related to the subject injury." The agreement stated Ms. Thomas suffered a "contusion to [her] neck and headaches" on November 23, 2015, when she was struck by a package. Additionally, the parties agreed that Ms. Thomas could file a PBD for increased benefits under Tennessee Code Annotated section 50-6-207(3)(B) if she had not returned to work "at the expiration of the initial compensation period occurring on September 25, 2017."

1

After the settlement, Ms. Thomas did not return to work as of September 25 and timely filed the PBD at issue.[1] In it, Ms. Thomas stated that she was "struck in the head by a heavy package" and she was "unable to return to work due to my work-related injuries." She claimed entitlement to permanent total disability benefits or alternatively enhanced permanent partial disability benefits under Tennessee Code Annotated section 50-6-242.

Ms. Thomas deposed Dr. Melvin Goldin, a psychiatrist, twice: once before the filing of the PBD and again almost exactly one year later.[2]

From his testimony, it appears that Dr. Goldin was Ms. Thomas's authorized treating physician. His diagnosis at Ms. Thomas's first visit in May 2016 was not headaches or a neck contusion as listed in the settlement agreement, but instead, verbatim, "Somatic symptom disorder coded in International Classification of Diseases [ICD] 10th Edition as F45.1 of moderate severity." He characterized Ms. Thomas's presentation as "excessive thoughts, feelings and behaviors related to somatic symptoms as manifest by disproportionate and persistent thoughts about the seriousness of one's symptoms [.]" This remained the diagnosis in November 2016 when he assessed his 10% rating.

Dr. Goldin's diagnosis formed the basis for Federal Express's argument that Ms. Thomas was not entitled to increased benefits. Specifically, it argued that a somatic-symptom disorder is a non-compensable "mental injury." In support of that position, it offered an excerpt of the ICD manual that defined somatoform disorders much like Dr. Goldin. Further, it offered an excerpt from the *AMA Guides to the Evaluation of Permanent Impairment* which provides that somatoform disorders are neither work-related nor ratable. Federal Express conceded it did not advance these arguments before settlement of the original claim.

Beyond his rating, Dr. Goldin testified extensively regarding Ms. Thomas's continued psychological symptoms and his treatment, which included medications and counseling. He confirmed his diagnosis remained somatic-symptom disorder through September 17, 2018. He testified that her condition was then "starting to go beyond what's common with a pain disorder [and was] moving into a delusional disorder." For instance, at a visit on October 18, Dr. Goldin noted Ms. Thomas had been hospitalized for ten days due to mental problems. When asked if the hospitalization was medically

---

[1] Her attorney at the time later withdrew from the case.

[2] Dr. Goldin's testimony in both depositions is controlling of the dispositive issue. However, the collective medical records placed into evidence exceed 600 pages. The Court reviewed all of the records but will not summarize them in detail, as they are not necessary to address the relevant issue. The complete record is listed in the Appendix to this Order.

necessary, he said yes; when asked if it was "related to her workers' compensation injury," he said, "I was not certain of that."

This uncertainty continued. For example, when he testified to his uncertainty over the cause of Ms. Thomas's hospitalization, he also said he was "beginning to entertain the question that . . . there was a severe impairment premorbidly" and that Ms. Thomas's "degree of distress and impairment by this point was causing me to question whether this was actually connected [to the injury]." He elaborated that he did "not believe the diagnosis of somatoform disorder of any kind accounts for the level of [Ms. Thomas's] psychotic, delusional preoccupation;" instead, "[t]here is an additional diagnosis which I have not made thus far officially." When asked to explain, Dr. Goldin said, "I would have to give that some thought, that's why I haven't officially made it . . . but it's definitely a psychotic disorder." Importantly, he added that he could not differentiate which of Ms. Thomas's complaints were related to her injury and which were not.

Before his change of opinion, Dr. Goldin completed a "Physician Certification Form" under section 50-6-242 certifying that Ms. Thomas could not return to her pre-injury occupation because of the injury. In fact, he also testified that Ms. Thomas's mental-health problems precluded her from gainful employment of any kind, both before and after his change of diagnosis. These opinions supported Ms. Thomas's claim for increased benefits. At the hearing, her testimony focused on her ongoing psychological symptoms, which prohibited her from working. She said that she currently receives Social Security Disability benefits.

Federal Express maintained its argument regarding the non-compensability of the mental injury and offered the deposition of Dr. Mark Webb, a psychiatrist, who evaluated Ms. Thomas at Federal Express's request. In October 2017, at approximately the same time Dr. Goldin said Ms. Thomas's complaints were becoming delusional, Dr. Webb thought Ms. Thomas exhibited signs of "histrionics," described by him as "making mountains out of molehills, blowing things out of proportion, [and] making bizarre statements." He did not relate those complaints to the work injury.

**Findings of Fact and Conclusions of Law**

Ms. Thomas must establish all elements of her claim by a preponderance of the evidence. *See* Tenn. Code Ann. § 50-6-239(c)(6) (2019).

To recover benefits, she must show to a reasonable degree of medical certainty that her work contributed more than fifty percent in causing her injury when considering all causes. "Shown to a reasonable degree of medical certainty" means that, "in the opinion of the treating physician, it is more likely than not considering all causes as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(A)-(D).

3

The Court begins its analysis with the settlement agreement. In the agreement, Federal Express did not dispute Dr. Goldin's rating, and the Court holds that Federal Express cannot question it now. Rather, both parties are bound by the agreement's terms. "The doctrine of res judicata or claim preclusion bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, *or could have been*, litigated in the former suit." *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012) (emphasis added). If Federal Express questioned the validity of Dr. Goldin's rating, it should have contested its validity before settling Ms. Thomas's original award.

Likewise, though the injury in the settlement agreement was not defined as a somatic-symptom disorder, the parties settled the case based on a rating for that diagnosis. Again, res judicata bars Federal Express from contesting the compensability of the disorder that prompted the rating at the time of the settlement. *See Uselton v. Conwood*, No. 02S01-9607-CV-00070, 1997 Tenn. LEXIS 108, at *11 (Tenn. Workers' Comp. Panel Feb. 25, 1997) ("Although they ultimately settled their first suit, both parties had full opportunity to litigate the issues," and res judicata barred a second suit).

However, precluding a challenge to the original injury does not end the Court's inquiry. Rather, it must consider to what extent, if any, Ms. Thomas is entitled to permanent disability benefits beyond those paid under the settlement agreement.

The Court first considers whether Ms. Thomas is entitled to increased benefits under Tennessee Code Annotated section 50-6-207(3)(B). Under that statute, she is entitled to increased benefits if, *"at the time"* her initial benefit period expired, she had not returned to work at the same or greater wage earned at the time of injury. (Emphasis added). The proof is uncontroverted that Ms. Thomas had not returned to work when the initial compensation period expired on September 25, 2017, and as of that date, Dr. Goldin maintained his opinion that Ms. Thomas's injury was work-related. Thus, the Court holds Ms. Thomas is entitled to increased benefits under section 50-6-207(3)(B).

Second, the Court considers whether Ms. Thomas is entitled to additional benefits under section 50-6-242(a) in lieu of increased benefits under section 50-6-207(3)(B). To receive additional benefits, the Court must find this is an extraordinary case and that, by clear and convincing evidence, it would be inequitable to limit Ms. Thomas's recovery to only the benefits under section 50-6-207(B). Further, Ms. Thomas must establish, *as of the date of the award*, the following three factors:

1) She has an impairment rating of at least 10% to the body as a whole according to the *AMA Guides* from the authorized treating physician;

4

2)      She has a certification from the authorized treating physician that "due to the permanent restrictions . . . *as a result of the injury* [she] no longer has the ability to perform [her] pre-injury occupation; and

3)      She is not earning 70% or more of the wages she earned at the time of injury.

(Emphasis added).

Notably, the language of section 50-6-242(a) is different than section 50-6-207(B) in an important respect: namely, section 242(a) considers the employee's inability to work *as of the date of the award* rather than *at the time* the initial benefit period expired. (Emphasis added). This difference controls here. Specifically, the Court finds Dr. Goldin testified that as of September 2018, one year after the expiration of the initial benefit period, Ms. Thomas's condition had gone beyond somatic symptoms, and he could not say with certainty the new diagnosis, yet unnamed, was work-related.

Thus, *at the time of the award*, specifically the trial date, Ms. Thomas's proof did not establish she was unable to work "*as a result of the injury.*" *See Batey v. Deliver This, Inc.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 2, at *9 (In analyzing a factor of section 50-6-242, the Appeals Board noted the examination is made "at the time of trial") (Emphasis added). It follows, and the Court holds, that Ms. Thomas is not entitled to section 50-6-242 additional benefits.

Third, the Court holds Ms. Thomas is not entitled to permanent total disability benefits. To be eligible for those, she must establish that, because of her injury, she is "totally incapacitated from working at an occupation that brings [her] an income[.]" Tenn. Code Ann. § 50-6-207(4)(B). As noted, at the time of trial, the proof does not support that her injury at Federal Express was the cause of her incapacitation.

In summary, Ms. Thomas is entitled to increased benefits under Tennessee Code Annotated section 50-6-207(3)(B). Under that section, the only applicable multiplier is 1.35 times the original award because Ms. Thomas did not return to work. The Court finds the other multipliers do not apply because Ms. Thomas is under age forty, has a high school diploma, and lives in a county with an unemployment rate that is not two percentage points greater than Tennessee's average rate. Thus, under the statutory formula, her increased benefits are $3,379.01.[3]

Finally, Ms. Thomas's former counsel filed an Attorney's Lien requesting reimbursement of expenses of $6,464.22 and requesting a ten-percent attorney's fee against Ms. Thomas's recovery. The Court reserves determination of the lien. Ms.

---

[3] The calculation is: 450 weeks x 10% x 1.35 x $214.54 (the compensation rate) = $13,033.31 less Ms. Thomas's original award of $9,654.30.

5

Thomas's former counsel must contact the Court to set a hearing on the lien within fifteen days of entry of this order if counsel desires to enforce it. At that hearing, the Court will consider both the positions of Ms. Thomas and counsel regarding the merits of the fee lien. As to expenses, Ms. Thomas has not requested discretionary costs at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Federal Express shall pay Ms. Thomas increased permanent partial disability benefits of $3,379.01 under Tennessee Code Annotated section 50-6-207(3)(B).

2. Federal Express shall continue to pay reasonable and necessary future medical expenses as required by the settlement agreement of March 2, 2017, under Tennessee Code Annotated section 50-6-204(a)(1)(A).

3. Ms. Thomas's claim for additional benefits under Tennessee Code Annotated section 50-6-242 and her claim for permanent total disability under Tennessee Code Annotated section 50-6-207(4) are dismissed with prejudice.

4. Ms. Thomas may file a motion for discretionary costs incurred in prosecuting her claim.

5. The Court assesses the $150.00 filing fee to Federal Express to be paid to the Court Clerk within five business days of this order becoming final under Tennessee Compilation Rules and Regulations 0800-02-21-.06, for which execution may issue if necessary.

6. Absent an appeal, this order shall become final thirty days after issuance.

7. Federal Express shall file a Statistical Data Form (SD-2) with the Court Clerk within five business days of the date this order becomes final.

**ENTERED February 19, 2020.**

Judge Allen Phillips
Court of Workers' Compensation Claims

6

## APPENDIX

Exhibits:
1. Dr. Dale Foster Neuropsychological Evaluation
2. Dr. David Goldstein Psychological Evaluation
3. Deposition of Dr. Melvin Goldin (April 27, 2018)
4. Deposition of Dr. Melvin Goldin (April 26, 2019)
5. Deposition of Dr. Mark Webb
6. Medical Records of St. Francis Hospital
7. Photographs of Ms. Thomas's head
8. Opinion letter of Dr. Alan Nadel
9. Affidavit of Dr. Mark Green
10. Text of *International Classification of Diseases,* 10th ed., Chapter 5
11. *AMA Guides,* Chapter 14, Section 1, pp. 348-349
12. *AMA Guides,* Glossary, pp. 609-615
13. Chronological Medical Records (submitted by employer)
14. Supplemental Chronological Medical Records (submitted by employer)
15. Vocational Evaluation of Dr. David Strauser, Ph.D.
16. Order Approving Workers' Compensation Settlement Agreement
17. Records of Dr. Wally Juraschka, Ph.D.

Technical record:
1. Petition for Benefit Determination (May 4, 2018)
2. Dispute Certification Notice (July 11, 2018)
3. Request for Scheduling Hearing
4. Scheduling Order
5. Motion to Amend Scheduling Order
6. Employee's Response to Employer's Motion to Amend Scheduling Order
7. Order Granting Motion to Amend and Amended Scheduling Order
8. Second Motion to Amend Scheduling Order
9. Second Order Granting Motion to Amend Scheduling Order and Amended Scheduling Order
10. Joint Motion to Continue Compensation Hearing
11. Third Amended Scheduling Order
12. Dispute Certification Notice (January 8, 2019)
13. Motion to Continue Compensation Hearing
14. Order Continuing Compensation Hearing
15. Motion to Withdraw as Counsel for Employee
16. Ms. Thomas's Response to Motion to Withdraw
17. Order Allowing Withdrawal of Counsel
18. Notice of Attorney's Lien
19. Fourth Amended Scheduling Order

20. Employer's Pre-Hearing Statement
21. Employee's Handwritten Pre-Hearing Statement
22. Employee's Pre-Hearing Statement

## CERTIFICATE OF SERVICE

I certify that a copy of this Compensation Hearing Order was sent as indicated on February 19, 2020.

| Name | Certified Mail | First Class Mail | Email | Service Sent To: |
|---|---|---|---|---|
| Alisha Thomas, Self-Represented Employee | | | X | blessbysuccess@aol.com |
| Stephen Vescovo, Attorney for Employer | | | X | svescovo@lewisthomason.com |
| Morgan & Morgan, c/o Jonathan May, Employee's Former Attorneys | | | X | jmay@forthepeople.com |

Penny Shrum, Court Clerk
**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

8



<u>Compensation Hearing Order Right to Appeal</u>:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation

www.tn.gov/workforce/injuries-at-work/

wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____   ☐ Motion Order filed on _____

☐ Compensation Order filed on_____   ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties

**Appellant(s) (Requesting Party):** _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee
Appellee's Address: _____ Phone: _____
Email: _____
Attorney's Name: _____ BPR#: _____
Attorney's Email: _____ Phone: _____
Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____ 2. Address: _____

3. Telephone Number: _____ 4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental $ _____ per month

Groceries    $ _____ per month    Telephone    $ _____ per month

Electricity    $ _____ per month    School Supplies $ _____ per month

Water    $ _____ per month    Clothing    $ _____ per month

Gas    $ _____ per month    Child Care    $ _____ per month

Transportation  $ _____ per month    Child Support  $ _____ per month

Car    $_____ per month

Other    $ _____ per month (describe: _____ )

10. Assets:

Automobile    $ _____    (FMV) _____

Checking/Savings Acct. $ _____

House    $ _____    (FMV) _____

Other    $ _____    Describe:_____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires:_____